# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 9, 2011

No. 08-10642

Lyle W. Cayce
Clerk

MONTE HASIE; HASIE FINANCIAL GROUP,

Plaintiffs–Appellants,

v.

OFFICE OF THE COMPTROLLER OF THE CURRENCY OF THE UNITED
STATES,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:07-CV-208

Before BENAVIDES, OWEN, and HAYNES, Circuit Judges.

PRISCILLA OWEN, Circuit Judge:

The Office of the Comptroller of the Currency (OCC) denied Monte Hasie's request for disclosure of suspicious activity reports (SARs) for use in civil litigation. Hasie challenged that decision in district court, and the district court granted summary judgment in favor of the OCC. We affirm.

## I

Following an investigation by the United States Attorney's Office (USAO), Hasie and other individuals were indicted on numerous counts of conspiracy, money laundering, bank fraud, and making false statements to a bank. During discovery in that criminal case, the USAO produced numerous boxes of

documents and allowed all defendants and their counsel to copy the materials. These documents included certain SARs filed by State National Bank (State National) with the OCC and the drafts and notes used in preparation of the SARs. The USAO did not seek a protective order for these documents, nor did it seek return of the documents upon conclusion of the criminal trial. However, there is no evidence in the administrative record before us that any of the documents disclosed by the USAO to the defendants in the criminal proceedings were entered into evidence, although one of Hasie's co-defendants did identify on his exhibit list at least five SARs pertaining to Dan Nelson.

The district court in the criminal case rendered a judgment notwithstanding the jury's guilty verdict, acquitting Hasie on all twenty-two counts. Hasie then filed suit in a Texas state court against State National, asserting claims of malicious prosecution, abuse of legal process, negligence, intentional infliction of emotional distress, and tortious interference with business relations. Hasie alleged that State National actively sought his criminal prosecution despite its possession of information demonstrating Hasie's innocence, asserting that the bank was driven by an "ulterior motive."

During discovery in the state-court litigation of these civil claims, Hasie produced documents disclosed by the USAO in the criminal case, including the SARs State National transmitted to the OCC. Upon production of these documents, State National filed a motion to compel Hasie to return the SARs and SAR-related materials and notified the OCC. Both the OCC and the Financial Crimes Enforcement Network (FinCEN) concluded that the OCC did not waive its nondisclosure rights notwithstanding the prior disclosure by the USAO and that Hasie's use of the information would be contrary to the Bank

No. 08-10642

Secrecy Act (BSA)[1] and strong public policies in favor of maintaining the secrecy of the SARs.

The OCC then wrote Hasie's counsel (1) asserting that the documents were covered by the BSA, (2) threatening criminal charges if Hasie did not relinquish the documents to the OCC immediately, and (3) stating that Hasie must file an administrative request to gain lawful access to the documents.  The OCC also asserted in that communication that SARs and SAR-related documents fall within the definition of non-public OCC information in 12 C.F.R. § 4.32(b); are confidential and privileged; "[are] the property of the Comptroller," as provided in 12 C.F.R. § 4.32(b)(2); and that the OCC had a right to control the subsequent use and dissemination of this information pursuant to 12 C.F.R. § 4.37(d) that was not waived by Hasie's possession of the SARs as a result of the criminal proceedings.

Hasie returned the documents at issue to the OCC, and the Texas state court stayed the civil litigation pending resolution of whether Hasie was entitled to obtain the SARs from the OCC.  Meanwhile, Hasie submitted a written request for limited disclosure of documents, including the previously disclosed SARs, pursuant to the OCC's *Touhy* regulations.[2]  The OCC denied Hasie's request for the SARs, concluding that Hasie's "showing of relevance is negated completely by the statutory safe harbor [31 U.S.C. § 5318(g)(3)] accorded a bank that files a SAR," Hasie's need for the requested information did not outweigh the public interest in maintaining its confidentiality, public policy considerations supported prohibiting disclosure in this case, and the OCC had not waived privileges attached to the SARs.

---

[1]  31 U.S.C. § 5311 *et seq.*

[2]  *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951) (approving federal agencies' use of regulations to govern administrative requests for production of agency documents and testimony); 12 C.F.R. § 4.31 *et seq.*

No. 08-10642

Hasie sought review of the OCC's decision in the district court. On the parties' cross-motions for summary judgment, the district court granted the OCC's motion. Hasie timely appealed. Hasie also moved this court to unseal the administrative record.

## II

Judicial review of the OCC's decisions is governed by the Administrative Procedure Act (APA).[3] Under the APA, "the reviewing court [decides] all relevant questions of law."[4] Agency actions, findings, and conclusions, however, may be set aside only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.[5] The scope of review under this standard is narrow, and a court is not to substitute its judgment for that of the agency.[6] "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[7] We review the district court's grant and denial of summary judgment de novo.[8]

## III

We first note that amendments to some of the regulations at issue became effective January 3, 2011, and as of that date, disclosure by the OCC of SARs or information that would reveal the existence of a SAR is addressed specifically in 12 C.F.R. § 21.11(k). None of these amendments were in effect when the events at issue transpired. Accordingly, all references in this opinion to the Code

---

[3] 5 U.S.C. § 706.

[4] *Id.*

[5] *Id.*

[6] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[7] *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

[8] *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).

4

No. 08-10642

of Federal Regulations will be to the regulations that governed prior to January 3, 2011.

Hasie argues that the SARs and related documents are not "non-public" information within the meaning of 12 C.F.R. § 4.32(b)(1) because the USAO produced them to Hasie and the other defendants in the criminal prosecution without a protective order or restrictions on their use or dissemination. Relatedly, Haise asserts that the government waived any privilege regarding these documents when the USAO produced them in the criminal proceedings.

The OCC's regulations define "non-public information" as "information that the OCC is not required to release under the [Freedom of Information Act] (5 U.S.C. § 552) or that the OCC has not yet published or made available pursuant to 12 U.S.C. § 1818(u) and includes . . . (vii) A Suspicious Activity Report filed by . . . a national bank."[9]   A SAR falls within this definition.  A SAR's release cannot be required under the Freedom of Information Act, and the OCC's disclosure of information to the USAO that prosecuted Hasie was not pursuant to 12 U.S.C. § 1818(u).  The SARs are "non-public information."

The gravamen of Hasie's argument is that the USAO's production of SARs to him and the other defendants in his criminal prosecution waived their classification as non-public information.  We first examine the OCC's release of the disputed information to the USAO.

The OCC's regulations permit the Comptroller to disclose non-public information to "certain other government agencies of the United States and foreign governments, [and] state agencies with authority to investigate violations of criminal law . . . for their use, when necessary, in the performance of their official duties."[10]  That subsection further provides that "[a]ll non-public

[9]  12 C.F.R. § 4.32(b) (2010).

[10]  12 C.F.R. § 4.37(c).

No. 08-10642

OCC information made available pursuant to this paragraph is OCC property, and the OCC may condition its use on appropriate confidentiality protections, including the mechanisms identified in § 4.37." The OCC's disclosure to the USAO was authorized by this regulation. Because the regulation provides that the OCC "may" condition use of non-public on appropriate confidentiality protections, we construe this regulation to permit but not require the OCC to employ confidentiality protections when disclosing non-public information to law enforcement agencies. The OCC's failure to do so does not automatically render non-public information discoverable by private litigants.

The paragraph succeeding subsection 4.37(c) in the regulations confirms this construction.[11] It reflects that the OCC does not intend to waive its rights by providing non-public information to those investigating potential criminal violations:

> (d) *Intention of OCC not to waive rights.* The possession by any of the entities or individuals described in paragraph[] . . . (c) of this section of non-public OCC information does not constitute a waiver by the OCC of its right to control, or impose limitations on, the subsequent use and dissemination of the information.[12]

The confidentiality mechanisms available to the OCC include "entry of a protective order by the court or administrative tribunal presiding in the particular case or, in non-adversarial matters, on a written agreement of confidentiality."[13] There is no indication in the record that a court case was pending when the OCC produced non-public information to the USAO. The OCC did not, however, obtain a written agreement with the USAO. But here again, we do not think this stripped the information of its non-public status. The

---

[11] 12 C.F.R. § 4.37(d).

[12] *Id.*

[13] 12 C.F.R. § 4.38(a).

6

No. 08-10642

regulations provide that the OCC *may* condition its release of non-public information on a protective order or confidentiality agreement.[14] The regulations do not *require* the OCC to employ any of these procedures, although it would appear that in many cases, including those similar to the present case, that would be a prudent practice.

The question remains whether the USAO's production of non-public information to Hasie and the other criminal defendants rendered the information public. We conclude that it did not. The governing regulations appear to contemplate that the OCC retains the "right to control, or impose limitations on, *the subsequent use and dissemination of the information*" after it provides non-public information to law enforcement entities such as the USAO.[15]

The dissemination of the non-public information by the USAO was also limited in scope. The information was produced as part of discovery in a criminal case to the criminal defendants. It was not broadcast to the public or made generally available. There is no indication that the SARs were to be used for anything other than the purposes of the criminal litigation. Moreover, there is no indication that the OCC was aware that the information at issue was produced by the USAO to Hasie and the other defendants, much less that Hasie continued to possess the SARs after the conclusion of the criminal litigation. The OCC asserted its control over dissemination and use of the SARs at the first available opportunity. Under these circumstances, we cannot say that the OCC's conclusion that its control over the SARs was not waived was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

---

[14] *Id.*

[15] 12 C.F.R. § 4.37(d) (emphasis added).

No. 08-10642

## IV

Hasie contends that the OCC abused its discretion in denying his request for the SARs because (1) the OCC pre-determined that his request would be denied, (2) the factors set forth in 12 C.F.R. § 4.33 all weigh in favor of granting his reqest, (3) the OCC should not have considered the BSA's safe harbor provision, and (4) the OCC failed to individualize the assessment of Hasie's administrative request.

## A

A claim of bias based on pre-determination carries with it a high burden of persuasion.[16] To prevail, Hasie must "overcome a presumption of honesty and integrity in those serving as adjudicators" and must "convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."[17]

Hasie points to OCC communications with State National and Hasie's counsel. Hasie claims that these communications establish that, months prior to his request and without knowledge of the relevant facts, the OCC had already concluded that the SARs would not be disclosed. While these communications do express the OCC's belief that the protections and public policy considerations regarding SARs continued to apply despite the prior disclosure, they do not establish that the OCC had pre-determined the merits of any future requests for disclosure.

---

[16] *See Withrow v. Larking*, 421 U.S. 35, 47 (1975); *Baran v. Port of Beaumont Navigation Dist.*, 57 F.3d 436, 446 (5th Cir. 1995) ("The contention that a tribunal is unconstitutionally biased because it has prejudged the facts of a particular dispute carries a more difficult burden of persuasion than a claim based on actual bias.").

[17] *Withrow*, 421 U.S. at 47.

No. 08-10642

**B**

Hasie asserts that the OCC gave dispositive effect to the BSA's safe harbor provision for banks that prepare SARs[18] in assessing the relevance of the documents requested by Hasie and that the OCC should not have considered the safe harbor's liability shield for banks as a factor in the *Touhy* analysis.

Under the *Touhy* regulations, a requestor must show, among other things, that (1) the information is relevant to the purpose for which it is sought, (2) other evidence reasonably suited to the requestor's needs is not available from another source, and (3) the need for the information outweighs the public interest considerations in maintaining the confidentiality of the OCC information.[19] The OCC may deny a request based on the failure by a requestor to make any one of these showings.[20]

We conclude that the OCC's findings regarding the balance between Hasie's interests and the public policy considerations were not arbitrary, capricious, or an abuse of discretion, and therefore we do not consider the requirement in 12 C.F.R. § 4.33(a)(3)(iii)(A) "that the information is relevant to the purpose for which it is sought." The OCC concluded that disclosing the SARs

---

[18] 31 U.S.C. § 5318(g)(3)(A). That subsection provides:

> Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution who makes, or requires another to make any such disclosure, shall not be liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, or under any contract or other legally enforceable agreement (including any arbitration agreement), for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.

[19] *See* 12 C.F.R. § 4.33(a)(3)(iii); *BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of the Currency of the U.S.*, 467 F.3d 871, 872 n.2 (5th Cir. 2006).

[20] 12 C.F.R. § 4.35(a)(1)-(2).

to aid a private litigant in proving a case against a bank "may adversely affect timely, appropriate and candid reporting by institutions. If institutions believe that information in a SAR can be used for purposes unrelated to law enforcement purposes, they will have an incentive to adjust the nature of their reporting to respond to the risks they perceive from the other uses."[21] The OCC then listed several examples of such possible adjustments, including the possibility that an institution might "delay or forego filing a SAR" if it believed that private litigants would be able to use a SAR in litigation against it.[22]

The OCC also considered Hasie's need for the SARs in its suit against State National. The OCC concluded that other sources of evidence were available to Hasie,[23] and that "[u]nder the circumstances, when the strong public policy interest in maintaining the confidentiality of SARs is considered, I conclude the public interest is paramount."[24] Hasie has not demonstrated "that other evidence reasonably suited to the requestor's needs is not available from any other source."[25] The OCC was not arbitrary or capricious and did not abuse its discretion in assessing the strength of Hasie's showing or balancing public policy considerations.

---

[21] Appellant's R. Excerpts Tab 4, at 3.

[22] *Id.*

[23] *Id.* at 2 ("It is also apparent that you could, through the testimony of bank employees, gather evidence on any improper animus on the bank's part toward Mr. Hasie, apart from the preparation and filing of any SARs. Beyond this, you are entitled to discover the bank's records created in the ordinary course of business, and we understand that the bank has produced or made available 15 boxes of documents.").

[24] *Id.* at 2-3.

[25] 12 C.F.R. § 4.33(a)(3)(iii)(B).

No. 08-10642

## C

An administrative agency abuses its discretion if it reaches its decision "procedurally without a full, good faith, individualized consideration."[26] A review of the OCC's decision reflects that Hasie's request received a good faith, individualized assessment. The OCC demonstrated that it knew the particular facts pertaining to Hasie's request and utilized those facts in its analysis of the balance between Hasie's need and the public interest. The OCC acknowledged in its brief in this court that "when a requestor can convincingly show a strong need, such as where no evidence suitable to his needs is available, the weight accorded the public policy considerations may be offset." The OCC's decision to deny Hasie's request reflects that the need in Hasie's particular case did not offset public policy considerations.

## V

Finally, Hasie moves to have the administrative record unsealed. The OCC does not oppose this motion to unseal except with respect to one sentence in the record, which it asks permission to redact. We agree that the sentence at issue may reference confidential material under the BSA. Therefore, we grant Hasie's motion to unseal provided that the OCC is given the opportunity to redact the sentence at issue before the record is unsealed.

\*        \*        \*

The district court's grant of summary judgment in favor of the OCC is AFFIRMED. Hasie's motion to unseal the record is GRANTED.

---

[26] *Sierra Club v. Morton*, 510 F.2d 813, 829 (5th Cir. 1975).

11