# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50880

KEITH LEON AUSTIN,

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA, Department of the U.S. Army,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**
June 11, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:14-CV-277

Before WIENER, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Sergeant Keith Leon Austin claims that the United States Army improperly denied him benefits under the Servicemembers' Group Life Insurance Traumatic Injury Protection ("TSGLI"[1]) program for injuries he suffered during his service in Iraq. He filed suit in district court

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] TSGLI is an extension of the Servicemembers' Group Life Insurance ("SGLI") program. Thus, the acronym "TSGLI" reflects this history, rather than being an acronym from the exact name of the program.

No. 14-50880

challenging the Army's decision to award him only $25,000 of the $100,000 he requested in insurance benefits under TSGLI. The district court granted the Army's motion for summary judgment and dismissed Sgt. Austin's action, holding that the partial denial of Sgt. Austin's claim was not arbitrary and capricious. We affirm.

## I.    FACTS AND PROCEEDINGS

In mid-2007, Sgt. Austin was involved in a motor vehicle accident during a combat mission in Iraq. He suffered injuries to his neck, back, and head. In January 2009, he underwent back surgery to relieve his worsening pain. That August, following months of convalescence, Sgt. Austin was cleared to return to light work duty. The injuries he suffered, however, eventually led him to retire from the Army in December 2010.

Members of the armed services may participate in the TSGLI program, which provides financial assistance to service members who suffer traumatic injuries.[2] To receive TSGLI benefits, a service member must have suffered a "qualifying loss."[3] A traumatic injury like Sgt. Austin's, that results in an "inability to perform at least 2 Activities of Daily Living (ADL)" independently, qualifies as such a loss.[4] The statute recognizes six ADLs: bathing, continence, dressing, eating, toileting, and transferring (in or out of a bed or chair).[5] TSGLI will pay $25,000 for each consecutive 30-day period of ADL loss, up to a maximum of $100,000 for 120 consecutive days.

To apply for benefits, a plan participant must file a form SGLV 8600 with his service branch. This form has two parts: Part A, to be filled out by the

---

[2] *See* 38 U.S.C. § 1980A.
[3] *Id.* § 1980A(a)(1).
[4] 38 C.F.R. § 9.20(f).
[5] 38 U.S.C. § 1980A(b)(2)(D); *see also* 38 C.F.R. § 9.20(e)(6)(vi).

claimant, and Part B, the "Medical Professional's Statement," in which the claimant's physician must certify the qualifying losses claimed.  Part A includes an authorization for release of medical records under the Health Insurance Portability and Accountability Act ("HIPAA").

The claim is then reviewed by a certifying official at the claimant's branch of service.  If that official approves any benefits, he instructs Prudential Life Insurance Company of America, the private insurance company that administers the TSGLI program, to pay such benefits and to notify the claimant if any part of the claim has been denied.

Sgt. Austin applied for TSGLI benefits sometime between November 2009 and March 2010.  His application comprised his completed SGLV 8600, on which he claimed 120 days of three ADL losses (bathing, dressing, and transferring functions) and a collection of medical records.  The surgeon who performed Sgt. Austin's back surgery, Dr. Masaki Oishi, certified this loss.  Notably, Dr. Oishi indicated that his certification was based on a review of Sgt. Austin's medical records, not on the physician's direct personal observation.

The medical records submitted by Sgt. Austin covered the period from July 2007 to November 2009; none covered the four months immediately following his surgery, January 13 to May 15, 2009, the period for which Sgt. Austin claimed ADL loss.  Sgt. Austin also submitted a "TSGLI Activities of Daily Living (ADL) Worksheet," a supplemental form that provided more details on his claimed ADL losses.  In that form, Sgt. Austin claimed a fourth ADL loss, adding toileting to the three ADL losses already claimed on his form SGLV 8600.  Dr. Oishi also certified that supplemental ADL worksheet.

Dr. Alan Janusziewicz, a TSGLI medical consultant, reviewed Sgt. Austin's claim and recommended that he receive benefits for only the first 30 days of ADL loss.  Most significantly to this case, he noted that "[n]o medical records from the period of claimed loss [were] submitted" and that Sgt. Austin's

No. 14-50880

"injury and treatment [were] consistent with ADL impairment for up to a month in the post-operative period." In March 2010, an Army certifying officer approved Sgt. Austin's entitlement to $25,000 in benefits for 30 days of ADL loss but denied the remainder of his claim. Sgt. Austin received this $25,000 on April 1, 2010.

On January 31, 2011, Sgt. Austin sent a handwritten request to the Army TSGLI Appeals Board asking for reconsideration of the remaining $75,000. He enclosed copies of six additional items of documentation: (1) a statement from the battle buddy who witnessed the 2007 accident; (2) his retirement orders from the Army, which cited his permanent physical disability as a result of the accident; (3) statements from his wife and stepson; (4) his two requests for leave starting on January 12, 2009, and May 13, 2009; (5) a note from Dr. Oishi dated May 13, 2009, indicating that Sgt. Austin should remain off work until August 17, 2009; and (6) a note from Dr. Oishi dated August 13, 2009, indicating that Sgt. Austin could return to work in a limited fashion. Of these six, only the statements from Sgt. Austin's wife and stepson address his inability to perform ADL functions during the 120-day period that followed his surgery.

The same Army certifying officer reviewed the request for reconsideration and denied it, noting that Sgt. Austin had submitted "no new medical documents for review." On March 14, 2011, Prudential wrote to Sgt. Austin, notifying him of this decision. This letter, however, only informed Sgt. Austin that his claim had been denied because his "loss did not meet the standards for TSGLI."

At that point, Sgt. Austin retained a lawyer, who, on December 8, 2011, wrote to the Army, appealing its denial of Sgt. Austin's request for reconsideration. That letter pointed out that Prudential's March 14 writing did "not contain a loss disposition code as required by [the] TSGLI Procedures

4

No. 14-50880

Guide." Sgt. Austin's lawyer also enclosed a statement from Sgt. Austin, copies of the statements from his wife and stepson that had been submitted previously, and a copy of the supplemental ADL worksheet from Sgt. Austin's original application for benefits.

Sgt. Austin's appeal was rejected on February 29, 2012, for the same reason as before: "No documentation *from period of ADL loss claimed . . . .*"[6] This time, he received a letter from the chief of the Army TSGLI branch, explaining that "medical documentation fr*om the period which* [Sgt. Austin was] *claiming*"[7] was required "to properly adjudicate" his claim. This letter also gave information on his appeal rights.

Sgt. Austin did not submit medical documents for the relevant period. Instead, he filed this suit on March 26, 2014, asserting a claim for breach of contract. The Army filed a motion for summary judgment dismissing this action. The district court granted that motion on the ground that the Army's partial denial of Sgt. Austin's claim was not arbitrary and capricious. This appeal followed.

## II.    ANALYSIS

### A.    Standard of Review

38 U.S.C. § 1975 confers jurisdiction on the federal district courts to adjudicate claims founded on the TSGLI program. Neither § 1975 nor § 1980A specify a standard of review for these agency decisions.[8] We therefore turn to the default rule found at 5 U.S.C. § 706(2) "and ask whether the [a]gency's

---

[6] Emphasis added.

[7] Emphasis added.

[8] Sgt. Austin suggests that 38 U.S.C. § 1980A ought to be construed in his favor, as "legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946). But neither party points to any ambiguity in the statute whose interpretation would be aided by this canon.

action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'"[9] and whether it satisfies "statutory, procedural, [and] constitutional requirements."[10]  "[C]onsideration is . . . confined to the administrative record."[11]

In applying this highly deferential standard of review, courts afford agency actions a "presumption of regularity"[12] and defer to them even if the court would have decided the issue differently.[13]  "While the court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,' and while 'this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.'"[14]  An agency's decision passes muster if it "articulated a rational connection between the facts found and the decision made."[15]  This

---

[9] *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496–97 (2004) (quoting 5 U.S.C. § 706(2)(A)); *accord Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 379 (5th Cir. 2008) (per curiam).

[10] *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971) (citing 5 U.S.C. § 706(2)(B)–(D)).  Both parties rely on the substantial-evidence standard, but review under 5 U.S.C. § 706(2)(E) is only indicated in particular narrow circumstances.  *See* 5 U.S.C. § 706(2)(E); *Overton Park*, 401 U.S. at 414 ("Review under the substantial-evidence test is authorized only when the agency action is taken pursuant to a rulemaking provision of the Administrative Procedure Act itself, or when the agency action is based on a public adjudicatory hearing." (citation omitted)).  There is no indication that the Army's partial denial of Sgt. Austin's request for TSGLI benefits occurred via a formal adjudicative hearing.  *See Weller v. United States*, No. 14-68-SCR, 2014 WL 5320133, at *4 n.7 (M.D. La. Oct. 17, 2014).

[11] *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963).

[12] *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 904 (5th Cir. 1983) (quoting *Overton Park*, 401 U.S. at 415) (internal quotation mark omitted).

[13] *Hasie v. Office of the Comptroller of the Currency of the U.S.*, 633 F.3d 361, 365 (5th Cir. 2011).

[14] *Avoyelles*, 715 F.2d at 904 (quoting *Overton Park*, 401 U.S. at 416).

[15] *Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 380 (5th Cir. 2008) (per curiam) (quoting *Pension Benefit Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 367 (5th Cir. 2004)) (internal quotation marks omitted); *see also 10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013) ("We will uphold an agency's action 'if its reasons and policy choices satisfy minimum standards of rationality.'" (quoting *Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010))).

articulation need not be perfect, so long as the agency's reasoning can be discerned.[16]

## B.     Merits

Sgt. Austin raises three specific objections to the Army's handling of his claim and the district court's judgment upholding that handling: (1) Any deficiency in his application that resulted from his failure to provide medical records for the period of January 13 to May 15, 2009, should be attributed to the Army, which, he claims, had a duty to seek out those records; (2) the district court erred when it failed to consider Dr. Oishi's certification of Part B of Sgt. Austin's form SGLV 8600 and when it discounted the probative value of his supplemental ADL worksheet and family statements; and (3) Prudential did not adequately inform him of the reason that his claim was partially denied.

### 1.     HIPAA Authorization

According to Sgt. Austin, the Army failed "to follow their own regulations in requesting medical records"—that is, the Army acted arbitrarily and capriciously by requiring him to sign a HIPAA release in Part A of his application, but then not following up on that authorization by requesting the missing medical records from his medical providers.  This argument fails for multiple reasons.

First, we have been unable to find any authority that supports Sgt. Austin's theory that collecting a HIPAA release confers on the collecting entity an affirmative duty to use it to collect reports and records.  His only "evidence"—a sentence in the Federal Register,[17] a section of the TSGLI

---

[16] *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004) ("Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974))).

[17] *See* Traumatic Injury Protection Rider to Servicemembers' Group Life Insurance, 70 Fed. Reg. 75,940, 75,945 (Dec. 22, 2005) (explaining that the HIPAA release was required as part of Form SGLV 8600 "so that the service departments and OSGLI *can* obtain necessary

No. 14-50880

Procedural Guide published by the Department of Veterans Affairs,[18] and an online interview with a TSGLI administrator[19]—suggests, at most, that with the HIPAA release in hand, the Army *could* have sought out his medical records, not that it was *obligated* to do so. Indeed, the TSGLI interview actually indicated that the burden of furnishing relevant records rested with the service member, not the service branch processing his claim.[20]

Second, to the extent that Sgt. Austin now relies on 38 U.S.C. § 5103A, which imposes a duty on the Secretary of Veterans Affairs to help claimants who apply for veterans benefits,[21] he has waived the issue. Sgt. Austin did not raise § 5103A before the district court or in his opening brief on appeal.[22]

Finally, Sgt. Austin's HIPAA release was defective. He failed to date it, thus rendering it legally inoperable.[23] Although he suggests that the Army had an obligation to inform him of this oversight and allow him to correct it, he cites no authority for this proposition.

---

medical information to determine if the service member is eligible for the benefit" (emphasis added)).

[18] *See* DEP'T OF VETERANS AFFAIRS, TRAUMATIC INJURY PROTECTION UNDER SERVICEMEMBERS' GROUP LIFE INSURANCE (TSGLI): A PROCEDURAL GUIDE 58–59 (2015), http://www.benefits.va.gov/INSURANCE/docs/TSGLIProceduresGuide.pdf (instructing TSGLI certifying officers to use a certain form to request additional information from a medical professional "when [the information] is needed to adjudicate the TSGLI claim").

[19] *See TSGLI: Traumatic Servicemembers' Group Life Insurance*, BLACKFIVE (July 8, 2007), http://www.blackfive.net/main/2007/07/tsgli-traumatic.html.

[20] *See id.* ("Therefore, it's unfortunately incumbent on -- and this has put a little bit of a burden on the soldier and the medical side, but typically the servicemember needs to go to the personnel administration division of each hospital and procure a copy of their records.").

[21] *See* 38 U.S.C. § 5103A(a)(1) ("The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary."); *id.* § 5103A(b)(1) ("As part of the assistance provided under subsection (a), the Secretary shall make reasonable efforts to obtain relevant private records that the claimant adequately identifies to the Secretary.").

[22] *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995); *FDIC. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).

[23] *See* 45 C.F.R. § 164.508(b)(2)(ii), (c)(1)(vi).

No. 14-50880

In conclusion, there is no evidence that the Army breached a contractual obligation to Sgt. Austin by failing to seek out medical records for the months of convalescence following his surgery for which he sought ADL loss compensation. We agree with the district court that the Army did not act arbitrarily and capriciously in this matter.

### 2. Dr. Oishi's Certification and Sgt. Austin's Family Statements

Sgt. Austin also asserts that the Army acted arbitrarily and capriciously in partially denying his claim in spite of his physician's certification of his ADL loss and his family members' statements corroborating his account. As noted above, the standard of review on this issue is highly deferential to the agency's decision, which may be upheld as long as it is rationally related to the factual record.

Despite Dr. Oishi's certification and Sgt. Austin's wife's and stepson's statements, the Army articulated a rational reason for granting him benefits for only 30 days' ADL loss. Sgt. Austin did not produce, and still has not produced, any medical records whatsoever for the subject period of January 13 to May 15, 2009, nor has he stated definitely that such records do not exist. It is not irrational for the Army to require production of all relevant medical records regarding ADL loss for the periods at issue, particularly when, as here, the medical consultant who reviewed Sgt. Austin's other medical records concluded that his condition was consistent with only 30 days' loss.

Sgt. Austin contends that Dr. Oishi's certification on Part B of the application form should have been enough. Yet the Army is free to seek a second opinion when evaluating claims,[24] and indeed, there is authority to

---

[24] *See Fail v. USA*, No. 12-CV-01761, 2013 WL 5418169, at \*6 (D. Colo. Sept. 27, 2013) ("The record indicates that the Army chose not to simply defer to Ms. Burns' opinions, and instead, reviewed Mr. Fail's medical records itself to determine whether such records supported the claimed limitations. This Court cannot say that the Army's decision to do so was inherently arbitrary and capricious, an abuse of discretion, or contrary to law.").

support deferring to the agency's in-house expertise.[25]    Furthermore, Dr. Oishi's certification was problematic in several ways.  First, he did not provide any descriptions of the assistance that Sgt. Austin needed: The "Describe assistance needed" box next to each checked ADL function was left blank, as was the space for "Medical Professional's Comments" at the end of the form.  Second, Dr. Oishi provided very little information about himself, leaving blank much of the "Medical Professional's Information" section of the form.  Third, Dr. Oishi signed the certification but failed to date it.  Fourth, he did not check the box certifying personal observation of Sgt. Austin's loss, but rather indicated that his opinion was based solely on his post hoc review of Sgt. Austin's medical records.  It was not arbitrary and capricious for the Army to grant little weight to this certification, given the sparseness and secondhand nature of Dr. Oishi's opinions.

Dr. Oishi also certified Sgt. Austin's supplemental ADL worksheet, which did provide more detail on the assistance Sgt. Austin required.  This worksheet, however, was problematic in its own way.  First, the directions specified that it was "to be completed by a Licensed Medical Professional . . . [or] by [a] family member and . . . be validated by [a] Licensed Medical Professional."  Yet the form was clearly completed by Sgt. Austin himself, as it described Sgt. Austin's activities using the first person.  Second, there is an inconsistency between this worksheet, which claims four ADL losses, and Part B of the application, which claims only three.  As Dr. Oishi certified both documents, the Army would be reasonable to question Dr. Oishi's review of these documents and to seek a second opinion.  Third, this supplemental worksheet too was incomplete, as the "Narrative Summary" box

---

[25] *See id.* ("[T]he courts have found that an agency staff's full-time devotion to claims review and the goal of uniform nationwide application of agency standards counsel in favor of granting deference to the agency's expertise in such matters.").

was left blank. Given these problems with the two forms certified by Dr. Oishi, the Army was not irrational to discount them in its analysis of Sgt. Austin's claim.

Sgt. Austin is correct that his wife's and stepson's statements corroborate his claim of ADL loss, but again, the Army was not irrational to insist on seeing actual medical records for the period in question. In another TSGLI case, the mere fact that the administrative record contained *some* evidence supporting the claimant's ADL loss was not enough to render the agency's decision to deny benefits arbitrary and capricious.[26] Although we might conclude de novo that Sgt. Austin's family statements alone were sufficient to establish his ADL loss, the highly deferential standard of review that applies to this case precludes substituting our judgment for that of the agency. It was not arbitrary and capricious for the Army to rely on Dr. Janusziewicz's medical opinion instead of statements submitted by Sgt. Austin's family members.

### 3. *Inadequate Notice Letter*

Finally, Sgt. Austin complains that Prudential—and thus, the Army—did not adequately inform him of the reason that his claim was partially denied. This complaint appears to be based on Prudential's letter of March 14, 2011, which informed Sgt. Austin that his claim had been denied because his "loss did not meet the standards for TSGLI," but did not specifically mention his failure to submit adequate medical records as the reason.

Nothing in 38 U.S.C. § 1980A or 38 C.F.R. § 9.20 requires the Army to inform claimants of the reason that their claims were denied. That said, the TSGLI Procedural Guide does indicate that "[a]ll denial letters will contain the

---

[26] *See Weller v. United States*, No. 14-68-SCR, 2014 WL 5320133, at *4 (M.D. La. Oct. 17, 2014) ("That the plaintiff can point to evidence in the record which supports his claim is not dispositive.").

No. 14-50880

reason for the denial and an explanation of the member's appeal rights, specifically what they need to provide in their appeal." Prudential's March 14 letter did not fulfill this requirement. In and of itself, however, this error alone is not a sufficient basis for deeming the Army's decision arbitrary and capricious.[27] It is only when an agency publication has the force of binding law that a failure to follow it might constitute flawed or illegal agency action.[28] Otherwise, the agency's action is tested against the familiar arbitrary and capricious standard.[29]

"In administrative law, as in federal civil and criminal litigation, there is a harmless error rule."[30] Sgt. Austin has failed demonstrate why Prudential's initial failure inform him of the details of this defect in his claim was prejudicial, much less fatal. In fact, when the Army again rejected Sgt. Austin's claim on February 29, 2012, it did explain the problem; but Sgt. Austin declined to resubmit his claim with the proper documentation. And, at oral argument, his attorney could not confirm that *any* medical records from the relevant time period even exist. It is clear that Prudential's omission had no significant impact on Sgt. Austin's failure to obtain the remaining $75,000 in benefits that he requested.

### III.   CONCLUSION

Nothing in the administrative record indicates that the Army acted in an arbitrary and capricious manner when it denied a portion of Sgt. Austin's

---

[27] *See Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 229 (5th Cir. 2006).

[28] *See id.* at 229–30; *see also Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam) ("But the Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA.").

[29] *Coliseum Square Ass'n*, 465 F.3d at 230.

[30] *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659–60 (2007)) (internal quotation marks omitted).

No. 14-50880

claim for TSGLI benefits. We therefore AFFIRM the district court's dismissal of this action with prejudice.